1  Daniel T. Pascucci, Esq. (SBN 166780)
   dpascucci@mintz.com
2  Nathan R. Hamler, Esq.  (SBN 227765)
   nhamler@mintz.com
3  Ben Wagner, Esq. (SBN 243594)
   bwagner@mintz.com
4  MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
5  9255 Towne Centre Drive, Suite 600
   San Diego, CA  92121
6  Telephone: (858) 320-3000
   Facsimile:  (858) 320-3001
7
8  Marvin S. Gittes, Esq. (*pro hac vice*)
   mgittes@mintz.com
9  Timur E. Slonim, Esq. (*pro hac vice*)
   tslonim@mintz.com
10 Peter F. Snell, Esq. (*pro hac vice*)
   psnell@mintz.com
11 MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
12 666 Third Avenue
   New York, NY 10017
13 Telephone:  (212) 935-3000
   Facsimile:   (212) 983-3115
14
15 *Attorneys for Defendant/Counter-Claimant*
   AMERICAN TECHNICAL CERAMICS
16 CORP.

Miles D. Grant (SBN 89766)
**GRANT & ZEKO, APC**
1331 India Street
San Diego, California 92101
Telephone;  619-233-7078
Facsimile:  619-233-7036
E-Mail:  mgrant@grantandzeko.com

Gregory F. Ahrens (*Pro Hac Vice*)
Brett A. Schatz (*Pro Hac Vice*)
**WOOD, HERRON & EVANS, L.L.P.**
441 Vine Street
2700 Carew Tower
Cincinnati, Ohio 45202
Telephone:  513-241-2324
Facsimile:  513-421-7269
E-Mail:  gahrens@whepatent.com
           bschatz@whepatent.com

Attorneys for Plaintiff
PRESIDIO COMPONENTS, INC.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESIDIO COMPONENTS, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>AMERICAN TECHNICAL CERAMICS CORP.,<br><br>                    Defendant. | Case No. 3:07-cv-00893-IEG-NLS<br><br>**PARTIES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION REGARDING ENTRY OF PROPOSED PROTECTIVE ORDER** |
| AMERICAN TECHNICAL CERAMICS CORP.,<br><br>                    Counter-Claimant,<br><br>          v.<br><br>PRESIDIO COMPONENTS, INC.,<br><br>                    Counter-Defendant. | **ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

I.      JOINT REQUEST FOR HEARING.................................................................1

II.     ATC'S POSITION.............................................................................................1

        A.      Mr. Slavitt As the Corporate Secretary and General Counsel of
                ATC Should  Be Permitted to Receive Presidio's Confidential
                Information ........................................................................................2

        B.      Presidio's Patent Prosecutors At Wood Herron & Evans
                Continue Targeting  Presidio's Patent Claims Against ATC................3

        C.      Prohibition on Any Person Receiving ATC's Technical
                Information from  Participating in Related Patent Prosecution Is
                Necessary to Protect Against  Substantial Likelihood of
                Inadvertent Disclosure or Use In Subsequent  Prosecution
                Activities ..........................................................................................6

        D.      Prosecution Bar Would Not Substantially Prejudice Presidio ..............8


PLAINTIFF'S POSITION PAPER REGARDING PROPOSED PROTECTIVE ORDER

I.      INTRODUCTION .........................................................................................10

II.     ARGUMENT .................................................................................................12

        A.      Mr. Slavitt, As The Vice President Of A Non - Party With
                Competitive Decision-Making Responsibility, Should Not Be
                Allowed  Access To Presidio's Trade Secrets And Confidential
                Information .......................................................................................12

        B.      Mr. Humphrey's Access To Certain, But Limited, ATC
                Information  Is Necessary For Presidio To Fully Present Its
                Case..................................................................................................15


PLAINTIFF'S REPLY PAPER REGARDING PROPOSED PROTECTIVE ORDER

I.      INTRODUCTION .........................................................................................18

II.     ATC FAILED TO JUSTIFY ITS REQUEST TO DEVIATE FROM
        THE  COURT'S APPROVED PROTECTIVE ORDER RELATIVE
        TO MR. SLAVITT .........................................................................................18

III.    ATC FAILED TO JUSTIFY ITS REQUEST TO DEVIATE FROM
        THE COURT'S APPROVED PROTECTIVE ORDER RELATIVE TO
        MR. HUMPHREY ..........................................................................................19

        A.      Mr. Slavitt's Position at AVX and the Duties He Performs Do
                Not Make  Mr. Slavitt a Competitive Decision-Maker.......................22

i

B.    Mr. Humphrey's Access to ATC's Confidential Technical Information  Presents An Unacceptably High Degree of Inadvertent Disclosure and Misuse ........................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**FEDERAL CASES**

4

*Amgen, Inc. v. Elanex Pharm., Inc.*,
    160 F.R.D. 134 (W.D. Wash. 1994) ...............................................16, 17

5

6

*Andrx Pharmaceuticals, LLC v. Glaxosmithkline, PLC*,
    236 F.R.D. 583 (S.D. Fl. 2006)...................................................................29

7

*Brown Bag Software v. Symantec Corp.*,
    960 F.2d 1465 (9th Cir. 1992) .............................................................12, 13

8

9

*Burlington Indus., Inc. v. Dayco Corp.*,
    849 F.2d 1418 (Fed. Cir. 1988)..................................................................21

10

*C 7008*,
    2003 U.S. Dist. LEXIS 23653 (E.D. Tex. Jan. 2, 2004).............................1

11

12

*C 7408*,
    1999 WL 618969 (N.D. Ill. 1999) ..............................................................1

13

14

*Chan v. Intuit, Inc.*,
    218 F.R.D. 659 (N.D. Cal. 2003)................................................................7

15

*Commissariat a L'Energie Atomique v. Dell Computer Corp.*,
    No. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004)...................6, 7, 8, 20

16

17

*Cummins-Allison Corp. v. Glory Ltd*, No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653
    ..............................................................................................................7

18

*Fluke Corp. v. Fine Instruments Corp.*,
    1994 U.S. Dist. LEXIS 16286 (32 U.S.P.Q. 2d BNA 1789) ....................17

19

20

*In re Papst Licensing, GmbH, Patent Litig.,No. MDL 1278*,
    2000 WL 554219 (E.D. La. 2000) ..............................................................7

21

22

*In re Plastics Additives Antitrust Litigation*,
    Case No. 03-2038, 2005 U.S. Dist. LEXIS 23771 (E.D. Pa. Aug. 23, 2005)........14, 19, 22, 23

23

*In re Sibia Neurosciences, Inc., Misc. Doc. 525*,
    1997 U.S. Dist. LEXIS 31828 (Fed. Cir. Oct. 22, 1997).........................17

24

25

*Infosint S.A. v. H. Lundbeck*,
    Case No. 06-cv-2869, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. May 16, 2007) .......... Passim

26

*Intel Corp. v. Via Technologies, Inc.*,
    198 F.R.D. 525 (N.D. Ca. 2000).................................................................12

27

28

*Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, L.L.C.*, No. 98 C 7408,  1999 WL 618969
    ..............................................................................................................7

*Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*,
    863 F.2d 867 (Fed. Cir. 1988).........................................................................................21

*Medtronic, Inc. v. Guidant Corp.,No. Civ. 00-1473*,
    2001 WL 34784493 (D. Minn. Dec. 20, 2001)..............................................................7

*Mikohn Gaming Corp. v. Acres Gaming Inc.*,
    50 U.S.P.Q.2d 1783 (D. Nev. 1998) ..............................................................................7

*Motorola, Inc. v. Interdigital Tech. Corp.*,
    No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714 (D.Del. Dec. 19, 1994)...............6, 7, 20, 27

*Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Corp.,* No. 96-1231-IEG (POR),
    1997 U.S. Dist. LEXIS 24130 (S.D. Cal. July 14, 1997) ................................. passim

*U.S. Steel v. United States*,
    730 F.2d 1465 (Fed. Cir. 1984)......................................................................................21

**SECONDARY AUTHORITIES**

Michael D. Kaminski, *Effective Management of US Patent Litigation*, 18 Intell. Prop. &
    Tech. L.J. 13, 24 (2006)..................................................................................................21

## I.   JOINT REQUEST FOR HEARING

Both parties believe that a hearing on this motion is appropriate. The parties request a telephonic hearing on the motion as expeditiously as possible, as all briefing has been completed, and lead counsel for defendants do not reside in this district.

## II.   ATC'S POSITION

Pursuant to Federal Rule of Civil Procedure 26 and Patent Local Rule 2.2, Defendant, American Technical Ceramics Corp. ("ATC"), moves this Court for an entry of a Protective Order attached hereto as Exhibit A. The parties have agreed on all of its provisions except for paragraphs 7 and 8(c). Having reached an impasse in their negotiations, the parties present the competing provisions and supporting arguments for this Court's consideration.

The dispute concerns two confidentiality issues. The first disputed issue concerns access of ATC's officer, Corporate Secretary, and General Counsel Evan Slavitt, Esq., who is also the General Counsel of ATC's parent corporation AVX, to Presidio's Confidential Information designated ATTORNEYS' EYES ONLY. The parties agree in principle that some in-house attorneys or corporate officers not involved in competitive decision-making and in patent prosecution should be able to receive and review the other side's Confidential Information designated ATTORNEYS' EYES ONLY. Thus the parties have agreed upon the below language of paragraph 8(c), except for the bolded language regarding Mr. Slavitt.

> Information designated "ATTORNEYS EYES ONLY" shall be available only to the following:
>
> c.  No more than two (2) in-house attorneys or officers of the receiving party (including support staff as reasonably necessary), who have signed the form attached hereto as Attachment A, who are responsible for and/or working directly in the prosecution or defense of this action, and are not presently directly involved in patent procurement activities and/or in business decision-making and provided that no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in paragraph 10(b), below, **including Mr. Evan Slavitt, Esq., Secretary of ATC and also VP of Business and Legal Affairs of AVX**; (Ex. A, ATC's Proposed Protective Order, ¶ 8(c)).

Since Mr. Slavitt as a Corporate Secretary and General Counsel of ATC is directly working on the defense of this action and meets all the requirements of paragraph 8(c) of the Protective Order, ATC requests that this Court issue an order allowing Mr. Slavitt's access to Presidio's Confidential Information designated ATTORNEYS' EYES ONLY. Presidio disagrees.

The second issue concerns an ATC's request that the Protective Order include a provision precluding any individual who had access to the parties' technical information designated ATTORNEYS' EYES ONLY from participating in patent prosecution regarding the subject matter of this litigation--multilayer capacitor technology:

> Any individual who obtains, receives, has access to, or otherwise learns [in this matter], in whole or in part, technical information designated ATTORNEYS' EYES ONLY under this Protective Order shall not prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming multilayer capacitor technology within two (2) years from the disclosure of such technical information or one (1) year after the conclusion of this litigation, including any appeals, whichever period is longer.  To ensure compliance with this provision, the parties shall create an ethical wall between those persons with access to technical information designated ATTORNEYS' EYES ONLY under this Protective Order and those individuals who prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming multilayer capacitor technology. (Ex. A, ATC's Proposed Protective Order, ¶ 7)

Presidio disagrees that such a restriction is necessary.

ATC is the movant regarding the disputed provisions of the Protective Order and its position is presented first.

### A.   Mr. Slavitt As the Corporate Secretary and General Counsel of ATC Should Be Permitted to Receive Presidio's Confidential Information

The declaration of Evan Slavitt, Esq., which is attached as Exhibit B, establishes that Mr. Slavitt's position as a Corporate Secretary and General Counsel of ATC and the attendant responsibilities with ATC to direct the defense of this case qualify him to receive Presidio's confidential information. He is not engaged in competitive decision making or patent prosecution

on behalf of ATC. (Ex. B, Slavitt Decl. ¶ 5) He does not give any advice to ATC with respect to such business matters as pricing, marketing strategy, product development and review, manufacturing, operational efficiencies, patent claim drafting, or other operational issues. (Ex. B, Slavitt Decl. ¶ 5). His primary responsibilities as the Corporate Secretary include attendance at and drafting of the Minutes of the Meetings of Officers and Directors of ATC. (Ex. B, Slavitt Decl. ¶ 5).[1]

He also is not substantively involved in patent prosecution for ATC. (Ex. B, Slavitt Decl. ¶ 6) His sole responsibility regarding patent prosecution is the initial selection of outside counsel and approval of the budgets and invoices of such counsel for payment. (Ex. B, Slavitt Decl. ¶ 6) Substantive patent prosecution is overseen by ATC's Director of Research and Development Dr. Robert Grossbach and its Director of Business Affairs Katherine Kelly. (Ex. B, Slavitt Decl. ¶ 6)

As Secretary and General Counsel for ATC, Mr. Slavitt is now directly responsible for overseeing the litigation, formulating strategy, and evaluating the potential for settlement. (Ex. B, Slavitt Decl. ¶ 7) Thus, Mr. Slavitt has a need to have access to such Presidio confidential information to properly enable his decision-making functions. Therefore, this Court should enter an order allowing Mr. Slavitt such access since he meets all the limitations of the agreed portion of paragraph 8(c) of the Protective Order.

**B.    Presidio's Patent Prosecutors At Wood Herron & Evans Continue Targeting Presidio's Patent Claims Against ATC**

Messrs. Gregory Ahrens and Brett Schatz of the law firm of Wood Herron & Evans LLP ("WHE") are litigators representing Presidio in this case.[2] Messrs. Ahrens and Schatz, on behalf of Presidio, have alleged that ATC infringes the United States Patent No. 6,816,356 (the "'356 Patent"), which issued as a continuation-in-part patent to its parent U.S. Patent No. 6,587,327. Both the '356 Patent and its parent patent were prosecuted by other attorneys from the WHE

---

[1] Mr. Slavitt is also not a competitive decision maker for AVX, nor does he participate substantively in patent prosecution for AVX. (Ex. B, Slavitt Decl. ¶¶ 13, 14)

[2] Both Mr. Ahrens and Mr. Schatz are admitted to prosecute patent applications before the U.S.P.T.O. under the registration numbers 32,957 and 59,764, respectively.

firm, Messrs. C. Richard Eby, Thomas Humphrey, and David Brinkman. While only three of them signed correspondence with the U.S.P.T.O. in those applications, Presidio granted a power of attorney to <u>every attorney in the WHE firm</u> to prosecute patents on its behalf. (Ex. C)

The patent prosecution activities in <u>this very family of applications</u> for multilayer capacitors continue and have not stopped.  Only a month ago, WHE's Messrs. C. Richard Eby and Joseph R. Jordan obtained a new patent for Presidio--U.S. Patent No. 7,307,829.[3] While such information is not yet publicly available, it would not be mere speculation to predict that further continuation, divisional, or continuation-in-part application(s) are being prosecuted by WHE in this family and deliberate efforts are being made to draft claims that read on ATC's multilayer capacitor products. Thus, if WHE prosecuting attorneys obtain access to ATC's technical information designated ATTORNEYS' EYES ONLY, WHE's strategy of continuing to modify the patent claims and issue new claims in this very patent family with new and currently pending Presidio patent applications provides real and fertile ground for inadvertent misuse or disclosure by WHE patent prosecutors. (For example, were Presidio to lose this infringement case, it could have its WHE attorneys prosecute an existing and a new patent application in this very family, claiming priority to the '356 Patent and thus avoiding the intervening prior art, with modified claims to better capture ATC's current products and its follow-on designs.)[4] In fact, the evolution of patent claims in the five patents in this family support the conclusion that Presidio is engaged in the pursuit of new and modified claims, with the hope of ensnaring one or more of ATC's capacitors.

Moreover, the prior alleged conduct of WHE prosecutors in violating their unflagging duty of candor and full disclosure of material facts to the PTO in the prosecution of the '356 patent and related patents also supports the conclusion that the likelihood of inadvertent misuse

---

[3] This patent family includes U.S. Patent Nos. 6,587,327; 6,816,356; 6,970,341; 7,075,776; and 7,307,829.

[4] From the publicly available PTO information, it appears that WHE has obtained more than 20 patents directed to various aspects of multilayer capacitor technology, naming at least one member of the Devoe family, which controls Presidio, as an inventor.

is great. WHE prosecutors cannot effectively segregate and protect ATC's confidential information from disclosure.  The review of the prosecution histories of this patent family demonstrates that the WHE attorneys went to great lengths to manipulate and suppress unfavorable information. While claiming in the '356 Patent that the fringe-effect was unexpectedly created and relying on it as the main feature of the invention, the WHE prosecutors C. Richard Eby and Joseph Jordan hid from the PTO at least two additional Presidio patents which flatly contradict the supposedly inventive nature of fringe effect. The first non-disclosed Presidio patent acknowledged that "[f]ringe-effect capacitance is always present" in capacitors that bear a striking resemblance to the capacitors shown in FIGS. 2A and 9A of the '356 Patent (Ex. D, U.S. Patent No. 6,545,854, 9:45-52). The second withheld patent, U.S. Patent No. 5,367,430 (the "'430 Patent"), states that "[i]t is a further object of the present invention to provide a monolithic multiple capacitor in which stray capacitance [fringe effect] between pairs of terminals is used to form useful circuit elements" and that the "structure shown here . . . will exhibit capacitances between adjacent edges [i.e., fringe effect]. At least some of these represent potentially usable values of capacitance" (Ex. E, '430 Patent, 6:44-58). Afraid to destroy the supposed novelty of fringe effect, the WHE prosecutors did not see fit to disclose Presidio's admissions regarding inherent presence of fringe effect to the PTO.[5]

        In addition, the very limited discovery documents provided by Presidio regarding its conception and reduction to practice of the alleged inventions claimed in the '356 Patent show that Presidio's conception of the invention is based on the public information regarding an ATC's patented capacitor (the Monsorno capacitor and patent) (Ex. G, PCI 409; Ex. H, PCI 407). If publicly available ATC's Monsorno patent was the source of the inspiration for Presidio's "conception" of its alleged invention, one can only imagine how many "inventions"

---

[5] Similarly to not disclosing the '430 Patent, the WHE prosecutors did not disclose, during prosecution of the '356 Patent, more than 90 references listed on its face. The WHE prosecutors cited only 1 reference (i.e., U.S. Patent No. 4,247,881) to the patent examiner, despite the fact that many of these references show capacitors that are very similar to the allegedly inventive capacitors of the '356 Patent. (See e.g., Ex. F, U.S. Patent Nos. 3,988,498, 4,312,026, and 4,661,884).

and patent applications Presidio can "find" in a treasure trove of ATC's <u>confidential</u> research and development files.

Furthermore, there can be no doubt that once even the best intentioned WHE prosecutor is exposed to ATC's confidential research and development files, this information would be merged with the general body of knowledge that WHE prosecutor has concerning multilayer capacitor technology. That knowledge would then be available and inseparable from the prosecutor's general knowledge when new claims were drafted in this continuing series of Presidio patent applications.

**C.    Prohibition on Any Person Receiving ATC's Technical Information from Participating in Related Patent Prosecution Is Necessary to Protect Against Substantial Likelihood of Inadvertent Disclosure or Use In Subsequent Prosecution Activities**

This Court should enter the proposed prosecution bar requested by ATC in paragraph 7 of the Protective Order. Balancing the need for disclosure against the possibility of inadvertent misuse of competitors' confidential information, the majority of the courts have entered similar prosecution bars for two related reasons. First, the courts have held that patent prosecution activities are a form of competitive decision-making.  Prosecuting patent applications involves decisions of scope and emphasis that implicate competitive decision-making, as claims may be drafted to read on new products where a party projects sales to be most critical. *See Commissariat a L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004) (*quoting Motorola, Inc. v. Interdigital Tech. Corp.,* No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714 at *11 (D.Del. Dec. 19, 1994)) (quotations omitted).

Second, such strategic counseling of clients regarding obtaining and modifying their patent claims heightens the risk of inadvertent misuse of confidential information of competitors obtained during litigation. The WHE patent prosecutors "will have to distill and compartmentalize the confidential knowledge they have gained" from ATC's technical information which requires them to

challenge the origin of every idea … . This would be a sisyphean task, for
as soon as one idea would be stamped "untainted," another would come to
mind. The level of introspection that would be required is simply too
much to expect, no matter how intelligent, dedicated, or ethical the ...
attorneys may be.

*Commissariat*, 2004 WL 1196965 (*quoting Motorola, Inc.*, 1994 U.S. Dist. LEXIS 20714 at *12, 14-15).

Other courts have followed the reasoning of *Motorola*, especially in cases where it is the plaintiff who is seeking to take advantage of the defendant's confidential information. See *Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003) (entering a prosecution bar, precipitated by plaintiff's outside counsel's dual role, on all counsel because advice regarding the scope of the claims in a patent should "be defined as competitive decision-making"); *In re Papst Licensing, GmbH, Patent Litig.*, No. MDL 1278, 2000 WL 554219 (E.D. La. 2000 May 4, 2000) (imposing prosecution bar on plaintiff's outside counsel because "the risk of inadvertent disclosure and misuse and the difficulty of distinguishing the source of the [plaintiff's] basis for filing new claims are great"); *Commissariat*, 2004 WL 1196965 (D. Del. May 25, 2004) (ordering prosecution bar on plaintiff's counsel); *Cummins-Allison Corp. v. Glory Ltd*, No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653 (E.D. Tex. Jan. 2, 2004) (entering a prosecution bar on all counsel, precipitated by plaintiff's outside counsel's dual role); *Medtronic, Inc. v. Guidant Corp.*, No. Civ. 00-1473, 2001 WL 34784493 (D. Minn. Dec. 20, 2001) (imposing prosecution bar on all counsel); *Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, L.L.C.,* No. 98 C 7408, 1999 WL 618969 (N.D. Ill. 1999) (ordering prosecution bar on plaintiff's outside counsel); *Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783 (D. Nev. 1998) (imposing prosecution bar on outside counsel who was, concurrently with the litigation, prosecuting patent applications related to the patent in suit).

A decade ago, in the *Sibia* case, Judge Gonzalez denied a request for a prosecution bar which would have prohibited defendant's long-standing patent prosecutor from defending his client against charges of infringement. *See Sibia Neurosciences, Inc. v. Cadus Pharmaceutical Corp.*, No. 96-1231-IEG (POR), 1997 U.S. Dist. LEXIS 24130 (S.D. Cal. July 14, 1997). Two

factors influenced the decision in that case. First, Judge Gonzalez found "it highly significant that … [plaintiff] SIBIA has been unable to cite any case other than *Motorola* in which a court even considered entering a protective order that disqualified outside counsel." *Id*. at 22. As shown by the cases above, the majority trend followed the reasoning of *Motorola*, entering prosecution bars disqualifying <u>outside</u> patent prosecution counsel.

Second, applying the case-by-case approach, Judge Gonzalez indicated that the decision would have been different had the Court been presented with a case where a "party sought to capitalize, in its patent application proceedings, on counsel's knowledge gained through the litigation." *Id*. at 26. This is exactly such a case. Here, plaintiff Presidio is seeking unfair advantage. It seeks the ability to have its WHE patent prosecutors target ATC's products by virtue of their review and analysis of ATC's most secret technical information. Thus, this case is different from the situation in *Sibia*, is similar to the *Motorola* facts, and the prosecution bar requested by ATC should here issue.

### D.    Prosecution Bar Would Not Substantially Prejudice Presidio

As the courts entering prosecution bars in the protective orders noted, plaintiff Presidio has a choice. All of its WHE litigation attorneys, who are not currently prosecuting patent applications in the multilayer capacitor field, can continue to represent Presidio in this litigation, and review ATC's technical information designated ATTORNEYS' EYES ONLY, without disruption. The only limitation on them would be that they cannot presently and until one year after the conclusion of this case, including appeals, start prosecuting patent applications in the multilayer capacitor field. They can prosecute patent applications in other areas for Presidio and others concurrently with litigating this case. *Commissariat*, 2004 WL 1196965 (D. Del. May 25, 2004) at *3.

The WHE patent prosecution attorneys who prosecute patents in the multilayer capacitor filed can continue servicing their clients without disruption provided that they do not review or access ATC's technical information designated ATTORNEYS' EYES ONLY. That certain WHE prosecutors may already be knowledgeable in the technology of multilayer capacitors and

thus could provide assistance to the WHE litigators is not a reason to endanger ATC's confidential technical information designated ATTORNEYS' EYES ONLY.

Since WHE prosecutors have not seen ATC's confidential technical information before, Presidio would not suffer any prejudice from having its prosecutors precluded from reviewing ATC's confidential technical materials. The *Sibia* Court held the lengthy prior involvement in that case of the defendant's lawyer, whose access to confidential information would be precluded under the prosecution bar, to be an important factor in the case-by-case balancing. *Sibia*, 1997 U.S. Dist. LEXIS 24130 at *21-22. Since this case is in its infancy, little prejudice would be suffered by Presidio in replacing WHE prosecutors in this action.

There are many other persons well versed in this technology, including independent consultants and academics, who could provide the same assistance to the WHE litigators without a substantial risk of inadvertent misuse or disclosure of ATC's confidential information. In fact, Presidio has already announced that it would be relying on Dr. Edward Godshalk as a claim construction expert. (Ex. I) Provided that Dr. Godshalk is not currently working for a competitor of ATC and otherwise complies with agreed paragraph 8(b) of the Protective Order, Dr. Godshalk could assist WHE litigators with such review. Otherwise, Presidio may find another consultant to assist its litigators.

**PLAINTIFF'S POSITION PAPER REGARDING**
**PROPOSED PROTECTIVE ORDER**

## I.    INTRODUCTION

Pursuant to the provisions of Rule 26(c) of the Federal Rules of Civil Procedure, Plaintiff Presidio Components, Inc. ("Presidio") and Defendant American Technical Ceramics Corporation ("ATC") have exchanged drafts of a proposed protective order designed to adequately protect the parties' information and things that will be produced during discovery in this matter.  The parties have reached an agreement regarding the proposed protective order, save two issues.

From the outset, Presidio proposed that the parties adopt the approved protective order attached as Appendix A to the Local Rules of Practice for Patent Cases Before the United States District Court for the Southern District of California.  As noted below, ATC proposes two provisions that go beyond this Court's approved protective order.  These two provisions do not protect the confidentiality of the information that will be produced in this case, and in fact allow for disclosure of this confidential information to third parties.  At the same time, ATC's proposal unnecessarily restricts Presidio's ability to fully present its case.

First, ATC proposes that Mr. Evan Slavitt, an officer of a non - party to this litigation, AVX Corporation ("AVX"), be given access to Presidio's trade secrets, and confidential research, development, and financial information.  ATC's proposal should be rejected because AVX, who doubles as a competitor of Presidio and the parent company of ATC, is a third - party with no legitimate reason to access Presidio's trade secrets and confidential information.  ATC's proposal should also be rejected for the additional reason that Mr. Slavitt, AVX's Vice President of Business and Legal Affairs and Head of Acquisition Programs, is intimately involved with and ultimately responsible for competitive decision-making.  Finally, access to Presidio's trade secrets and confidential information by its competitors will result in severe prejudice to Presidio.  Presidio's trade secrets and confidential information are, by definition, critical to its business and ability to effectively compete in the market.  Disclosure of this information to competitors such

as AVX will irreparably harm Presidio.

Second, ATC seeks to preclude Presidio's most knowledgeable outside attorney, Mr. Thomas Humphrey, Esq., from fully assisting Presidio in this matter.  In particular, ATC proposes a protective order including a provision that allows it to unilaterally exclude attorneys participating in patent prosecution from certain discovery information directly relevant to Presidio's case.  Because Mr. Humphrey participates in patent prosecution, ATC's proposal would grant ATC the unilateral ability to cut off Mr. Humphrey from information necessary to fully present Presidio's case.  ATC's proposal is unnecessarily overbroad, especially given the fact that Presidio has agreed that Mr. Humphrey would have no access to information relating to products of ATC that are unreleased or potential future product offerings, including ongoing research and development information.  Presidio also agrees that Mr. Humphrey would not have access to unpublished pending patent applications.  Rather, Mr. Humphrey would have access to information relating to the product accused of infringement in this matter, a product that has been available to the public for years through ATC's advertisements and sales.  Mr. Humphrey is Presidio's most knowledgeable outside attorney regarding the subject matter of this case, and his involvement is necessary to the preparation of Presidio's case.

Despite the fact that Presidio has agreed to exclude Mr. Humphrey from access to information relating to products of ATC that are unreleased or potential future product offerings, including ongoing research and development information, and unpublished pending patent applications, ATC still seeks to prevent Mr. Humphrey access.  ATC's proposal is vastly overbroad and would limit Presidio's ability to fully present its case, suggesting that ATC's goal is simply to prohibit Presidio from fully preparing its case.

1

## II.    ARGUMENT

2

      A.    **Mr. Slavitt, As The Vice President Of A Non - Party With Competitive Decision-Making Responsibility, Should Not Be Allowed Access To Presidio's Trade Secrets And Confidential Information**

3

4

      Presidio and ATC agree that in-house attorneys and officers of a party receiving

5

information during discovery should not have access to information designated "ATTORNEYS

6

EYES ONLY" if those individuals "…are responsible for and/or working directly in…business

7

decision-making." (*See* Exhibit A, ATC's Proposed Protective Order, at ¶ 8.c).[6]  Accordingly,

8

those individuals who are employed by the named parties in this lawsuit are not allowed access

9

to "ATTORNEYS EYES ONLY" information if they are responsible for or are involved in

10

business decision-making.  This aligns with cases dealing with this issue, which exclude those

11

employees who are involved in competitive decision-making:

12

13
        The court in *U.S. Steel* held that where in-house counsel is involved in

14
        'competitive decision-making' the risk of disclosure may outweigh the
need for confidential information. [citation omitted].  The term

15
        'competitive decision-making' was defined in *U.S. Steel* as 'shorthand for
a counsel's activities, association, and relationship with a client that are

16
        such as to involve counsel's advice and participation in any or all of the
client's decisions (pricing, product design, etc.) made in light of similar or

17
        corresponding information about a competitor.'

18

*Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Ca. 2000) (patent infringement

19

lawsuit).  In refusing access to the in-house counsel involved in the *Intel* case, the United States

20

District Court for the Northern District of California expressly noted the broad concept of

21

competitive decision-making, which includes but is not limited to licensing, settlement of

22

lawsuits, evaluation of patents, evaluation of products accused of infringement, evaluation of a

23

competitor's products, and interaction with managers. *Id.* at 530.

24

      The Ninth Circuit's decision affirming a magistrate judge's decision denying in-house

25

counsel access to trade secrets in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir.

26

27

28

---

[6] Information designated "ATTORNEYS EYES ONLY" relates to information that is "considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development, financial or other commercial information." (*See* Exhibit A, ATC's Proposed Protective Order, at ¶ 4.b).

1992) is based on a similar rationale. In *Brown Bag*, the Ninth Circuit noted that a crucial factor regarding access to a competitor's sensitive trade secrets and confidential information is whether in-house counsel was involved in "competitive decision-making." *Id.* at 1470. The Ninth Circuit found that the magistrate judge correctly took into account the potential damage to the disclosing party, Symantec, should the trade secrets inadvertently become subject to misuse by its competitor, Brown Bag. *Id.* at 1470-71. Despite crediting the in-house counsel's integrity and good faith, the Ninth Circuit affirmed the magistrate's decision denying in-house counsel access to trade secret information. *Id.* at 1471.

Here, Mr. Slavitt is AVX's Vice President of Business and Legal Affairs. He was also announced at a recent shareholders meeting as Head of Acquisition Programs. Accordingly, Mr. Slavitt is intimately involved in a host of competitive decision-making activities. As Head of Acquisition Programs, he undoubtedly was intimately involved in, and potentially directly responsible for, the recent acquisition of ATC by AVX. This necessarily involved an evaluation of ATC's products, including the product accused of infringement in this lawsuit, and their competitiveness in the market. Mr. Slavitt would also necessarily have considered the profitability and market strength of those products, as well as ATC's future sales and market strength. As Vice President of Business and Legal Affairs, it is understood that Mr. Slavitt has responsibility for all major contracts and business dealings for AVX. These are competitive decision-making activities that are a crucial factor weighing against Mr. Slavitt's access to Presidio's trade secrets and confidential information. Accordingly, ATC's proposal allowing access by Mr. Slavitt to Presidio's trade secrets and confidential information, should be rejected. (*See* Exhibit A, ATC's Proposed Protective Order, at ¶ 8.c).

At a minimum, Presidio submits it should be provided the opportunity to take Mr. Slavitt's deposition regarding his competitive decision-making activities, including his involvement in AVX's acquisition of ATC. Accordingly, in the alternative, Presidio requests the Court to provide Presidio the opportunity to depose Mr. Slavitt regarding these issues.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Slavitt should not be allowed access to Presidio's trade secrets and confidential information for an additional reason.  Mr. Slavitt is *AVX's* Vice President of Business and Legal Affairs, and Head of Acquisition Programs.  AVX is not a party to this lawsuit; rather, it is ATC that is the accused infringer here.  For this additional reason, access by Mr. Slavitt to Presidio's trade secrets and confidential information should be denied, and ATC's proposal should be rejected.

In *In re Plastics Additives Antitrust Litigation*, the United States District Court for the Eastern District of Pennsylvania dealt with the precise issue raised here – whether in-house counsel for a non-party parent company should have access to trade secrets and confidential information.  In accordance with the cases noted above, the district court first held that in-house counsel of the parties to the lawsuit would not be allowed access to trade secret and confidential information if they took part in decisions of a business or competitive nature relating to pricing, marketing, or other business strategies. *In re Plastics Additives Antitrust Litigation*, Case No. 03-2038, 2005 U.S. Dist. LEXIS 23771, at * 11 (E.D. Pa. Aug. 23, 2005) (attached hereto as Exhibit J).  With respect to in-house counsel for a parent company, the district court noted as follows:

> However, this Court denies defendant's proposed modification in all other respects. This Court will not permit the disclosure of highly confidential information to the in-house legal department of a non-party to the litigation, potentially a competitor to the party designating and producing the information, even if that legal department provides legal advice to a party in this litigation.  Nor will this Court permit the disclosure of confidential information to in-house counsel who are actively involved in strategic business decisions involving plastics additives. These adjustments carry the potential for abuse through the unauthorized dissemination of sensitive business materials to competitors.

*Id.* at *14-15.

Mr. Slavitt is in-house counsel involved in competitive decision-making for AVX, a company that is not a party to this lawsuit.  AVX is a competitor of Presidio.  Accordingly, for this additional reason, Mr. Slavitt should not be allowed access to Presidio's trade secret and confidential business information.

---

**B.    Mr. Humphrey's Access To Certain, But Limited, ATC Information Is Necessary For Presidio To Fully Present Its Case**

ATC proposes to grant itself the unilateral right to exclude Mr. Humphrey from all information and things produced by ATC in this matter designated "ATTORNEYS EYES ONLY."  ATC apparently intends to utilize this designation rather loosely, given that it has rejected Presidio's offer to limit Mr. Humphrey's access to ATC's information.  In particular, Presidio agreed to exclude Mr. Humphrey from accessing ATC discovery information relating to products of ATC that are unreleased or potential future product offerings, including ATC's ongoing research and development.  In addition, Presidio agrees to exclude Mr. Humphrey from access to any unpublished pending patent applications.  As noted above, ATC rejected Presidio's proposal.  The only stated reason for ATC's request is that Mr. Humphrey is involved in patent prosecution. (*See* Exhibit A, ATC's Proposed Protective Order, at ¶ 7).  ATC's position has been flatly rejected.

In *Infosint S.A. v. H. Lundbeck*, the defendant, like ATC here, sought a protective order that would exclude the plaintiff's outside counsel who was involved in patent prosecution from certain discovery information. *Infosint S.A. v. H. Lundbeck*, Case No. 06-cv-2869, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. May 16, 2007) (attached hereto as Exhibit K).  The district court held that the plaintiff's outside counsel would be excluded from certain information.  However, the district court held that plaintiff's outside counsel would be allowed access to other information.  The district court drew the line relative to the information the plaintiff's outside counsel would have access to, precisely as Presidio proposes here:

> Second, Dragotti [plaintiff's outside counsel] will still have access to all information designated as confidential, but will only be denied access to 'pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or processes for making them.'

*Id.* at *16-17.

Like Presidio's proposal, the district court in *Infosint* held that plaintiff's outside counsel, who was involved in patent prosecution, would be allowed access to certain confidential

15

information.  However, in order to avoid any potential prejudice to the disclosing party, the district court held that the plaintiff's outside counsel would not be allowed access to ongoing research and development.  In addition, the plaintiff's outside counsel was excluded from access to any pending patent applications.  This is precisely the line that Presidio proposes should be drawn with respect to Mr. Humphrey's access to ATC's discovery information. (*See* Exhibit L, Presidio's Proposed Protective Order, at ¶ 7).

Limiting access to Mr. Humphrey in this way is also a reasonable balancing of the parties' needs in this case.  Presidio concedes that access to information by Mr. Humphrey should be limited to a certain extent.  On the other hand, to fully present its case, Presidio requires Mr. Humphrey to participate in litigation and discovery to a limited extent.  Mr. Humphrey has represented Presidio for several years and is the most knowledge outside attorney regarding Presidio and the technology involved in this case. (*See* Exhibit M, Declaration of Mr. Thomas Humphrey, Esq., at ¶ 2).  Mr. Humphrey's background in Electrical Engineering makes him uniquely qualified and necessary to assist Presidio in this lawsuit. *Id.* at ¶ 3.  Further, Mr. Humphrey is in no way involved in the pricing, marketing, or conception and design of Presidio's products. *Id.* at ¶ 4.  These facts weigh in favor of allowing Mr. Humphrey limited access to ATC's discovery information:

> At the evidentiary hearing before the magistrate judge, it became apparent that only one of Cadus's outside counsel would be directly affected by the specific provision of the protective order in question. That attorney, Mr. DeConti, stated that he had represented Cadus for several years in patent prosecution work. He also stated that he represented more than 50 clients on biotechnology matters, including the area involved in the underlying district court action.  Significantly, he stated that he was not involved in 'competitive decision-making.'  The magistrate judge found that Mr. DeConti was very involved in the prosecution of patents for Cadus, but did not make any findings regarding outside counsel's involvement in 'competitive decision-making,' such as involvement in pricing or product design. However, in reviewing the magistrate judge's order, the district court held that none of the indicia of 'competitive decision-making' was present here. *See Amgen, Inc. v. Elanex Pharm., Inc.*, 160 F.R.D. 134, 139 (W.D. Wash. 1994)(motion for protective order was denied where in-

house counsel was not involved in competitive decision-making; *Fluke Corp. v. Fine Instruments Corp.*, 1994 U.S. Dist. LEXIS 16286, 32 U.S.P.Q. 2d (BNA) 1789, 1793 (W.D. Wash. 1994) (motion for protective order denied where in-house counsel had no involvement in sales, competitive decision-making**,** or design and development of products decisions and where in-house counsel would not disclose confidential information to any non-legal employee of the client corporation).

*In re Sibia Neurosciences, Inc.*, Misc. Doc. 525, 1997 U.S. Dist. LEXIS 31828, at *7-8 (Fed. Cir. Oct. 22, 1997) (attached hereto as Exhibit N).

In *Sibia*, the United States District Court for the Southern District of California even allowed the patent attorney involved in that case access to pending patent applications and research. *Id.* at *1-2.  Here, Presidio is not pressing for access to such information, although it appears that Mr. Humphrey may be entitled to do so.  Rather, Presidio proposes a reasonable compromise as allowed by the decisions of the courts noted above.  Accordingly, Presidio requests the Court to enter as a Protective Order Presidio's proposal attached hereto as Exhibit L.

**PLAINTIFF'S REPLY PAPER REGARDING**
**PROPOSED PROTECTIVE ORDER**

## I.    INTRODUCTION

ATC proposes to inject to two provisions that go beyond this Court's approved protective order, but fails to justify its proposal.  ATC's proposal does not protect the confidential nature of the information that will be produced in this case, and in fact allows for disclosure of this confidential information to third parties.  At the same time, ATC's proposal unnecessarily restricts Presidio's ability to fully present its case.

## II.    ATC FAILED TO JUSTIFY ITS REQUEST TO DEVIATE FROM THE COURT'S APPROVED PROTECTIVE ORDER RELATIVE TO MR. SLAVITT

The only support ATC can muster in support of its request that Mr. Slavitt be allowed access to Presidio's trade secrets and confidential information, is that Mr. Slavitt does not conduct any competitive decision-making on behalf of *ATC*.  ATC's argument misses the mark, widely, in that ATC has wholly ignored Mr. Slavitt's responsibilities as Vice President of Business and Legal Affairs of *AVX, a non-party*.  Mr. Slavitt was announced at a recent shareholders meeting as Head of Acquisition Programs, a fact conveniently and intentionally glossed over by ATC in its opening paper.  Accordingly, Mr. Slavitt is intimately involved in a host of competitive decision-making activities.

As Head of Acquisition Programs, Mr. Slavitt undoubtedly was intimately involved in, and potentially directly responsible for, the recent acquisition of ATC by AVX.  This necessarily involved an evaluation of ATC's products, including the product accused of infringement in this lawsuit and its competitiveness in the market.  Mr. Slavitt would also necessarily have considered the profitability and market strength of ATC's products, as well as ATC and AVX's future sales and market strength.  As Vice President of Business and Legal Affairs, it is understood that Mr. Slavitt has responsibility for all major contracts and business dealings for AVX.  These are competitive decision-making activities that are a crucial factor weighing against Mr. Slavitt's access to Presidio's trade secrets and confidential information.

18

Accordingly, ATC's proposal allowing access by Mr. Slavitt and AVX to Presidio's trade secrets and confidential information, should be rejected.

In *In re Plastics Additives Antitrust Litigation*, the United States District Court for the Eastern District of Pennsylvania dealt with the precise issue raised here – whether in-house counsel for a non-party parent company should have access to trade secrets and confidential information. *In re Plastics Additives Antitrust Litigation*, Case No. 03-2038, 2005 U.S. Dist. LEXIS 23771, at * 11 (E.D. Pa. Aug. 23, 2005). There, the Court held that it "will not permit the disclosure of highly confidential information to the in-house legal department of a non-party to the litigation, potentially a competitor to the party designating and producing the information, even if that legal department provides legal advice to a party in this litigation." *Id.* at *14-15.

For these reasons, Mr. Slavitt should not be allowed access to Presidio's trade secret and confidential business information.

## III. ATC FAILED TO JUSTIFY ITS REQUEST TO DEVIATE FROM THE COURT'S APPROVED PROTECTIVE ORDER RELATIVE TO MR. HUMPHREY

ATC has rejected Presidio's reasonable compromise that would protect ATC and its confidential information, but at the same time allow Presidio to fully present its case with the aid of its most knowledgeable outside counsel, Mr. Humphrey. Rather than the wholesale exclusion of Mr. Humphrey advocated by ATC, Presidio proposed that Mr. Humphrey would not be allowed access to information relating to products of ATC that are unreleased or potential future product offerings, or ongoing research and development. In addition, Mr. Humphrey would not be allowed access to any pending patent applications. Mr. Humphrey would have access to information relating to the product accused of infringement in this matter, a product that has been available to the public for years through ATC's advertisements and sales.

Mr. Humphrey is Presidio's most knowledgeable outside attorney regarding the subject matter of this case, and his involvement is necessary to the preparation of Presidio's case. Accordingly, ATC's proposal is unnecessarily overbroad. To the contrary, the restrictions

19

proposed by Presidio strike a reasonable compromise.  Presidio's proposed compromise was adopted by the district court in *Infosint S.A. v. H. Lundbeck*, Case No. 06-cv-2869, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. May 16, 2007):

> Second, Dragotti [plaintiff's outside counsel] will still have access to all information designated as confidential, but will only be denied access to 'pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or processes for making them.'

*Id.* at *16-17.

Like Presidio's proposal, the district court in *Infosint* held that plaintiff's outside counsel, who was involved in patent prosecution, would be allowed access to certain confidential information.  However, in order to avoid any potential prejudice to the disclosing party, the district court held that the plaintiff's outside counsel would not be allowed access to ongoing research and development.  In addition, the plaintiff's outside counsel was excluded from access to any pending patent applications.  This is precisely the line that Presidio proposes should be drawn with respect to Mr. Humphrey's access to ATC's discovery information.

Presidio's proposal also addresses the concern raised in the cases primarily relied upon by ATC.  For example, in *Motorola, Inc. v. Interdigital Tech. Corp.* and *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, both relied upon by ATC, the courts noted that the concern over access to information by counsel involved in patent prosecution was that claims can be adjusted to "read on new products and new directions…" *Motorola*, at *11; *Dell Computer*, at *8.

To address this same concern, Presidio has offered  a compromise in which Mr. Humphrey would be excluded from information relating to products of ATC that are unreleased or potential future product offerings, and from ongoing research and development.  In addition, Mr. Humphrey would not be allowed access to any pending patent applications.  Accordingly, under Presidio's compromise, Mr. Humphrey would not have access to information that would allow for adjustment of claims to read on new products.

1
2
3
4
5
6
7
8
9
10

ATC's proposal is a wholesale one, and fails to address the particular issues raised by the facts of this case.  ATC's proposal also makes assumptions about one group of lawyers, in this case lawyers who engage in patent prosecution, in violation of the Federal Circuit's guideline set forth in *U.S. Steel v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) ("Denial or grant of access cannot rest on a general assumption that one group of lawyers are more likely or less likely inadvertently to breach their duty under a protective order…Thus, the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure.")

11
12

Accordingly, Presidio submits that the compromise proposed by Presidio relative to Mr. Humphrey should be adopted.[7]

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

[7] In its opening paper, ATC reasserts the unproven allegations of inequitable conduct found it its Counterclaim.  ATC's allegations are unfounded, unproven, and false in many respects, as will be proven later.  All that needs to be mentioned here is that ATC, like most infringers, has raised the issue to distract the Court away from its wrongful infringement:  "(T)he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account. They destroy the respect for one another's integrity, for being fellow members of an honorable profession, that used to make the bar a valuable help to the courts in making a sound disposition of their cases, and to sustain the good name of the bar itself. A patent litigant should be made to feel, therefore, that an unsupported charge of 'inequitable conduct in the Patent Office' is a negative contribution to the rightful administration of justice." *Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988); *see also* Michael D. Kaminski, *Effective Management of US Patent Litigation*, 18 Intell. Prop. & Tech. L.J. 13, 24 (2006) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867 (Fed. Cir. 1988) ("As is known, about 20 years ago inequitable conduct was frequently pleaded as a defense to patent infringement; a patent that is 'unenforceable' due to a finding of inequitable conduct is dead. The defense was so misused by alleged infringers that the Federal Circuit once called this defense a 'scourge' on US patent litigation…The famous Kingsdown seemed to put a stop to the defense of inequitable conduct.").

## ATC'S RESPONSE TO PRESIDIO'S POSITION

### A.   Mr. Slavitt's Position at AVX and the Duties He Performs Do Not Make Mr. Slavitt a Competitive Decision-Maker

Presidio ignores the fact that Mr. Slavitt is the General Counsel and Corporate Secretary of ATC, the defendant in this case. The agreed upon portion of the Protective Order does not preclude officers and employees of a party from accessing confidential information simply because they are also affiliated with another entity, whether or not it is related to a party. Mr. Slavitt's position as General Counsel of AVX, the parent of ATC, does not change the fact that his involvement in and management of the defense of this lawsuit is conducted in his capacity as the General Counsel and Corporate Secretary of ATC.

Even if this were a case where Mr. Slavitt was an in-house lawyer only for a parent company, AVX, Presidio's reliance on *In re Plastics Additives Antitrust Litigation*[8] would be misplaced for two main reasons. First, in that case after the parties had operated under a protective order for over a year, one of the newly added defendants moved for a <u>modification</u> of the existing protective order. The standard for modification of protective orders is more stringent since the parties have produced documents in reliance on the fact that they would be available only to certain categories of people. *Id.* at *15-17. Neither Presidio nor ATC has relied on any protective order in this case because none has been entered.

Second, the *Plastics Additives* court acknowledged that the issue of access to confidential information by an in-house counsel for a non-party was not presented by any party which had standing to raise that issue. It noted that the "moving defendants do not claim that they fall into" a category where in-house counsel for a party's parent requires access to highly confidential materials because that party does not have in-house counsel and must rely upon the legal department of a parent company to formulate legal strategy. *Id.*

The *Plastics Additives* court was not ruling on the merits of this issue because it was a hypothetical question due to the lack of real controversy:

---

[8] *In re Plastics Additives Antitrust Litigation*, No. 03-2038, 2005 U.S. Dist LEXIS 23771 (E.D. Pa Aug. 23, 2005).

1
2
3
4
5
6
7

> Nor do moving defendants identify those defendants who lack in-house counsel, let alone demonstrate, through affidavit testimony, why defendants who lack in-house counsel would be prejudiced by relying upon the management and legal advice of presumably competent outside counsel. Finally, defendants fail to provide an example of an in-house attorney for a parent corporation, not otherwise a party to the litigation, who is in charge of directing the legal decision-making of a subsidiary/defendant and who would be prejudiced by the prohibition against access for in-house counsel of a non-party parent corporation or closely-affiliated company.[9]

8      In contrast, even if Mr. Slavitt is confined to his role as General Counsel of AVX, Mr. Slavitt

9  submitted a declaration showing that he is directing legal defense of this case for ATC and that

10  he would be prejudiced in his ability to direct strategy and determine if settlement is advisable if

11  he is precluded from accessing the entire case file. Since this case is the first patent infringement

12  lawsuit in ATC's 30-year history, ATC's management is not experienced in litigation strategy

13  and settlement evaluation and requires Mr. Slavitt's litigation expertise to guide it.  (Ex. B,

14  Slavitt Decl. ¶ 8). Lacking such litigation experience, ATC's management cannot effectively

15  evaluate the alternatives proposed by the outside litigation counsel, Mintz Levin, without Mr.

16  Slavitt's considerable input. (Ex. B, Slavitt Decl. ¶ 8).

17          Moreover, contrary to Presidio's argument settlement of lawsuits is not a competitive

18  decision-making activity. (Br. at 13). The main reason why in-house counsel need to see the

19  confidential documents is to assess the strength and weaknesses of a case to make a settlement

20  determination. Only a fully informed in-house counsel can make a recommendation to

21  management, who as competitive decision-makers would not have access to confidential

22  information, whether, when, and on what terms to settle a case. If settlement of lawsuits were

23  competitive decision-making, no court would have allowed in-house counsel access to

24  confidential materials. Yet the courts uniformly grant in-house counsel such access. It would be

25  absurd to hold a need to make settlement recommendations, the primary use of confidential

26  information by the in-house counsel, against the in-house counsel making a settlement

27  recommendation.

28

---

[9] *Id.* at *17, n.5.

1

2    Mr. Slavitt's responsibilities at either company do not make him a competitive decision-

3    maker. Presidio does not dispute that Mr. Slavitt's duties at <u>ATC</u> -- as its General Counsel and

4    Corporate Secretary -- do not make him a competitive decision-maker. In the words of the

5    *Infosint* decision, heavily relied upon by Presidio in its brief, "[u]nlike advice on patent issues,

6    there is no precedent that general corporate legal advice constitutes involvement in competitive

7    decision-making."[10]

8    Mr. Slavitt's role as Head of Acquisitions Program is the only aspect of Mr. Slavitt's

9    responsibilities at <u>AVX</u>, as opposed to ATC, that Presidio argues creates "potential damage" to it

10   through inadvertent disclosure. (Br. at 14). However, Presidio attributed to Mr. Slavitt a much

11   greater role than he actually performs. For example, Mr. Slavitt reviews the summaries,

12   projections, and analyses prepared by financial and marketing personnel and advisors but largely

13   does not prepare such analysis himself. (Ex. B, Slavitt Decl. ¶ 15). Not having a technical

14   expertise, Mr. Slavitt does not concentrate on the features and relative strength of the products.[11]

15   (Ex. B, Slavitt Decl. ¶ 15).

16   As the Head of Acquisitions, Mr. Slavitt is an administrator in charge of making sure that

17   all the different employees and outside advisors of AVX are moving along through the various

18   steps of the acquisitions process. (Ex. B, Slavitt Decl. ¶ 16). While Mr. Slavitt understands the

19   big picture of an acquisition, he is not necessarily involved in the minutiae of the analysis.[12] (Ex.

20   B, Slavitt Decl. ¶ 16). Since all the relevant facts are before the Court, there is no need for a

21   deposition of Mr. Slavitt as Presidio proposed. In sum, Mr. Slavitt is not a competitive decision-

22   maker for AVX and disclosure to him does not present dangers of inadvertent disclosure.

23

24   [10] *Infosint S.A. v. H. Lubeck A.S*., 06 Civ. 2869 (LAK) (RLE), 2007 U.S. Dist. LEXIS 36678 at
     *18 (S.D.N.Y. May 16, 2007).

25
     [11] Lack of technical expertise on Mr. Slavitt's part may present an opportunity for a compromise
26   where Mr. Slavitt could be given access to non-technical confidential information and Presidio's
     concerns over inadvertent disclosure of technical information would become moot.
27
     [12] Mr. Slavitt's involvement in contract drafting and review for AVX would not benefit from
28   having access to Presidio's confidential information because Presidio has not been a competitive
     bidder on any of the projects Mr. Slavitt has been involved in to date. (Ex. B, Slavitt Decl. ¶ 17).
     Mr. Slavitt does not participate in contracting function for ATC. (Ex. B, Slavitt Decl. ¶ 17).

24

**B.    Mr. Humphrey's Access to ATC's Confidential Technical Information Presents An Unacceptably High Degree of Inadvertent Disclosure and Misuse**

Presidio's admission "that access to information by Mr. Humphrey should be limited to a certain extent" implicitly recognizes the problem of inadvertent disclosure but does not propose an adequate solution. (Br. at 17). Presidio proposed to "exclude Mr. Humphrey from accessing ATC discovery information relating to products of ATC that are unreleased or potential future product offerings, including ATC's ongoing research and development." (Br. at 16). ATC cannot agree to such a limitation because its research and development files relating to the accused, commercial product, the 545L capacitor, are being used by ATC's engineers for ongoing research and development. (Exhibit O, Mruz Decl. ¶¶ 5, 6) ATC's engineers continuously reevaluate and improve their products, relying on the entire body of previous research and development data. They do not lock the R&D files which resulted in an earlier commercialized product and walk away. They do not start from scratch in their continuous product improvement efforts and try not to reinvent the wheel.  Accordingly, these ATC's confidential technical documents, regardless of what product code is on the label, present information that a patent prosecutor for a competitor would find relevant to his continuous claim drafting and would be unable to separate in his mind.

To avoid this strong possibility of inadvertent disclosure and misuse, ATC proposed a compromise that all attorneys who want to have access to ATC's confidential technical information should not subsequently prosecute patent applications in the relevant field of multilayer capacitors until one year after the resolution of this case expires. ATC's proposal is not, as Presidio argued, a "unilateral right to exclude Mr. Humphrey from all information and things produced by ATC in this matter designated 'ATTORNEYS' EYES ONLY.'" (Br. at 16) It is a choice that any lawyer should make before accessing ATC's confidential technical information. The lawyers have frequently been ordered to make such a choice by the courts incorporating a prosecution bar into the protective orders. (*See* Br. at 7-8)

Mr. Humphrey's declaration did not dispel the significant possibility and opportunity for inadvertent disclosure and hence the prosecution bar proposed by ATC is necessary in this case. Mr. Humphrey's admittedly central role in patent prosecution for Presidio[13] makes the danger of inadvertent disclosure and misuse too great in light of his law firm's stated philosophy to continuously use any available information to expand and redefine the scope of patent protection for its clients. WHE's strategy is to ensure "patents that issue are always one step ahead by covering the technology that may still be 'on the drawing board.'"[14]  ATC's confidential information at stake here is precisely this type of technology that is continuously on the ATC drawing board, and thus requires protection.

Mr. Humphrey submitted a conclusory statement that if he is not allowed to review certain ATC confidential information, "it is [his] belief that Presidio will suffer prejudice relative to Presidio's ability to fully present its case." (Ex. M, Humphrey Decl. ¶ 5.) He does not explain what information he would be looking for in ATC's production and what analysis of it he could perform that no other attorney or technical expert cannot perform.[15] The court in *Infosint*, a case Presidio heavily relies on for the two-tier approach, rejected similar "conclusory assertions of importance," which had not "shown how or why [patent prosecutor's] access to the information in question is critical to the prosecution of its case."[16]

In fact, there appears to be little relevance of the research and development files of ATC to proving the alleged infringement. The infringement analysis involves a comparison of the construed claims to the accused commercial product of ATC, not what that product looked like at

---

[13] Mr. Humphrey admits that he is "the most knowledgeable outside attorney regarding Presidio and the technology involved in this case." (Br. at 17; Ex. M, Humphrey Decl. ¶ 2).

[14] Ex. P, Case Studies Mechanical available at www.whepatent.com/case/index_mechanical.lasso.

[15] While WHE lawyers make an argument that "Presidio requires Mr. Humphrey to participate in litigation an discovery," they do not present any declaration from a Presidio employee to that effect.

[16] *Infosint S.A. v. H. Lubeck A.S.*, 06 Civ. 2869 (LAK) (RLE), 2007 U.S. Dist. LEXIS 36678 at *16 (S.D.N.Y. May 16, 2007).

different stages of development before it was commercially sold. Such prototypes and precursors do not make infringement more or less likely. What they can do for a skilled prosecutor like Mr. Humphrey, is to tell him what experiments worked and did not work, what other avenues of research or use may be potentially important, etc. In sum, they give Mr. Humphrey a wealth of <u>knowledge about the possible new direction for the technology</u>. It is very useful in selecting and targeting Presidio's patent claims he is currently prosecuting. For example, when selecting which, out of many, claims to prosecute for Presidio first, knowledge from review of ATC's technical information that ATC has sought a particular element or feature important, even if it is not incorporated in any present commercial products, could tell Mr. Humphrey to draft claims for Presidio which he knows are likely to encompass an ATC's potential feature. Mr. Humphrey is very unlikely to gain such an insight from any publicly available information since ATC carefully guards such information.

The omissions from Mr. Humphrey's declaration are quite telling. First, Mr. Humphrey does not state in his declaration that he has any experience or procedure for separating the information he would receive from review of ATC's confidential documents from the general body of knowledge he uses when advising Presidio on patent prosecution. There is a good reason why he cannot so pledge. As the *Motorola* court found, the level of introspection into the origin of every aspect of Mr. Humphrey's advice would be intolerably high, a true sysephean task.[17] Accordingly, the *Infosint* court held that the disclosing party's "desire to keep its proprietary information protected is a superior interest."[18]

Second, Mr. Humphrey also does not say that he is not prosecuting additional patent claims in the same patent family of the '356 Patent. In contrast, the patent prosecutor in *Infosint*, "offered to refrain from any involvement in such prosecution in the future" *Id.* at *13. Mr. Humphrey also did not declare that Presidio has ended the chain of such applications and

---

[17] *Motorola, Inc. v. Interdigital Tech. Corp.,* No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714 at *11 (D.Del. Dec. 19, 1994).

[18] *Infosint S.A. v. H. Lubeck A.S.*, 06 Civ. 2869 (LAK) (RLE), 2007 U.S. Dist. LEXIS 36678 at *16 (S.D.N.Y. May 16, 2007).

therefore, he would not have such an option available to him. In the very case Presidio relied on in its brief, *Infosint S.A. v. H. Lubeck A.S.*,[19] the court found such omissions to be important in restricting the prosecutor's access. *Id*. at *13 ("While he did not prosecute the patent asserted in this litigation himself, he was, <u>by his own omission</u>, involved in his firm's prosecution of the patent, at least to some degree.")

Mr. Humphrey's representation that he is not "involved in the pricing, novelty, or conception and design of Presidio's products"[20] rings hollow in light of his firm's repeated announcements of a contrary role that WHE's patent attorneys play for their clients. The Wood Herron & Evans ("WHE") firm has been marketing itself as a firm with "a managed team approach" where  "<u>a lead attorney</u> is <u>closely associated</u> with the client's research and commercial activities."[21] A senior partner at WHE and a member of its executive committee has described how its patent attorneys are inextricably intertwined with the decision-making of their clients.[22] These are not just empty marketing gimmicks. It is a strategy that WHE attorneys breathe every day. On its website, WHE gives an example of its patent prosecution prowess which lays down a striking example of potential inadvertent misuse of ATC's confidential technical information. When WHE took over prosecution of a medical device patent covering repair techniques for sports-related injuries, its "strategy in securing patent protection in this case has been to cover <u>all possible uses, adaptations and forms</u> of the technology … [b]y … aggressively seeking a number of patents with broad and comprehensive protection … . "[23]

WHE's attorneys did not accomplish this continuous expansion of patent claims alone. Their patent prosecutors work hand-in-glove with their clients:

---

[19] *Infosint S.A. v. H. Lubeck A.S.*, 06 Civ. 2869 (LAK) (RLE), 2007 U.S. Dist.36678 (S.D.N.Y. May 16, 2007).

[20] Ex. M, Humphrey Decl. ¶ 4.

[21] Ex. Q, WHE Scope of Practice, available at www.whepatent.com/firm/scope.lasso (emphasis added).

[22] Ex. R, C. Luken, Innovation: Critical to Growth, at 2, available at www.whepatent.com/news/.

[23] Ex. P, Case Studies Mechanical available at www.whepatent.com/case/index_mechanical.lasso (emphasis added).

> We have worked and <u>continue to work very closely with the client</u> by explaining the patent coverage currently obtained and currently sought, and receiving input from the client on <u>possible new directions for the technology</u> so that the <u>patent protection</u> <u>can also be steered in those same directions</u>. This ensures that the patents that issue are always one step ahead by covering the technology that may still be "on the drawing board."[24]

If WHE's patent prosecutors can get their hands on any technical information from ATC, they are likely to inadvertently let this ATC information, at least, subconsciously influence their steering of prosecution decisions for Presidio.

The *Infosint* case, on which Presidio relied to support its two-tier access proposal is inapplicable to this case. In *Infosint*, the patent prosecution lawyer, Mr. Dragotti from the Italian firm of Dragotti & Associati practiced in a different firm, hundreds of miles away, from the trial counsel at the New York firm of Kenyon & Kenyon LLP. This is far different when the lawyers from the <u>same "tight-knit" firm</u>, WHE, are both patent prosecution and litigation counsel in this case and are separated by a few flights of stairs at most.[25] In fact, Mr. Humphrey's status as a "<u>name</u>" partner for the relationship with Presidio, as well as the small size of WHE, "increases the likelihood of inadvertent disclosure, since the members of the firm who are prosecuting the patents at issue [and litigating this case] will be under [Mr. Humphrey's] supervision." *Infosint,* at *13-14 (*citing Andrx Pharmaceuticals, LLC v. Glaxosmithkline, PLC,* 236 F.R.D. 583,587 (S.D. Fl. 2006) (finding that small size of firm increased chance of accidental disclosure of confidential information)).

Given the strong contradictions between Mr. Humphrey's stated involvement with Presidio and WHE's apparently different approach to patent prosecution, ATC requests that this Court permit ATC to take Mr. Humphrey's deposition and document discovery related to those issues and to make a supplemental submission to this Court.

---

[24] *Id*. (emphasis added).

[25] Ex. S, D. Frei, K. Rooney, De Lombaerde, <u>Patents Pending: Wood, Herron & Evans LLP has stuck to what it does best -- and stayed in Cincinnati</u>, Business Courier of Cincinnati, April 2001, at 2, available at www.whepatent.com/news/.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Since the stated goal of all WHE's patent attorneys, including Mr. Humphrey, is to file more patent claims covering new directions of the technology, the ATC's new advances contained in its technical information would be retained in the minds of the WHE's patent prosecutors who cannot effectively deprogram their memory of this information which is highly valuable for ATC's competitor Presidio. Therefore, this Court should protect ATC's highly confidential technical information from falling into the hands and minds of those lawyers who would subsequently prosecute patent applications related to the multilayer capacitor field.

Dated: February 22, 2008

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

By:   /s/  Ben Wagner
      Daniel T. Pascucci, Esq.
      dpascucci@mintz.com
      Nathan R. Hamler, Esq.
      nhamler@mintz.com
      Ben Wagner, Esq.
      bwagner@mintz.com
      Marvin S. Gittes, Esq. (*pro hac vice*)
      mgittes@mintz.com
      Timur E. Slonim, Esq. (*pro hac vice*)
      tslonim@mintz.com
      Peter F. Snell, Esq. (*pro hac vice*)
      psnell@mintz.com
      MINTZ, LEVIN, COHN, FERRIS,
        GLOVSKY AND POPEO, P.C.
      666 Third Avenue
      New York, NY 10017
      Telephone:  (212) 692-6800
      Facsimile:  (212) 983-3115

      *Attorneys for Defendant/Counter-Claimant*
      AMERICAN TECHNICAL CERAMICS CORP.

30

WOOD, HERRON & EVANS L.L.P.


By:___/s/  Brett A. Schatz_____
    Gregory F. Ahrens
    Brett A. Schatz

*Attorneys for Plaintiff*
PRESIDIO COMPONENTS, INC.

## CERTIFICATE OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On February 22, 2008, I caused a copy of the following document(s):

**PARTIES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION REGARDING ENTRY OF PROPOSED PROTECTIVE ORDER (with accompanying exhibits);**

to be served by electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Miles D. Grant, Esq. | Attorneys for Plaintiff |
| **Grant & Zeko, APC** | PRESIDIO COMPONENTS, INC. |
| 1331 India Street | |
| San Diego, CA  92101 | Email:  mgrant@grantandzeko.com |
| | |
| Brett A. Schatz, Esq. | Attorneys for Plaintiff |
| Gregory F. Ahrens, Esq. | PRESIDIO COMPONENTS, INC. |
| **Wood Herron and Evans** | |
| 441 Vine Street | Email:  bschatz@whepatent.com |
| 2700 Carew Tower | gahrens@whepatent.com |
| Cincinnati, OH  45202 | |

Executed on February 22, 2008, in San Diego, California.


/s/ Ben Wagner
Ben Wagner

4263588v.1