1
2
3
4
5
6
7

8                              **UNITED STATES DISTRICT COURT**

9                              **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| PRESIDIO COMPONENTS, INC., )<br>)<br>          Plaintiff, )<br>v. )<br>)<br>AMERICAN TECHNICAL CERAMICS )<br>CORPORATION, )<br>)<br>          Defendant. )<br>_____)<br>)<br>AMERICAN TECHNICAL CERAMICS )<br>CORPORATION, )<br>)<br>          Counterclaimant, )<br>v. )<br>)<br>PRESIDIO COMPONENTS, INC., )<br>)<br>          Counterdefendants. )<br>_____) | Civil No. 07cv893 IEG (NLS)<br><br>**ORDER GRANTING PARTIES' JOINT MOTIONS FOR (1) A PROTECTIVE ORDER [Doc. No. 31]; and**<br>**(2) FOR LEAVE TO FILE EXCESS PAGES IN SUPPORT OF JOINT MOTION FOR PROTECTIVE ORDER [Doc. No. 32]** |

        Plaintiff/Counterdefendant Presidio Components, Inc. (Presidio) and Defendant/Counterclaimant American Technical Ceramics Corporation (ATC) have been negotiating the terms of a stipulated protective order in this case that will govern the exchange of confidential information.  While they agree on most of the terms in the proposed protective order, they disagree on two issues: (1) whether ATC's in-house general counsel Evan Slavitt, Esq. may access Presidio's Attorneys Eyes Only information (paragraph 8(c)); and (2) whether outside counsel for Presidio who receive Attorneys Eyes Only information should be barred from any involvement in patent prosecution in the field of multilayer

capacitors for a period of two years from the date they view the materials or one year after the conclusion of the litigation, whichever is longer (paragraph 7).

First, the Court recognizes that the parties advanced all their arguments in a single joint motion and therefore **GRANTS** the parties' joint motion to file excessive pages in support of their memorandum of points and authorities [Doc. No. 32]. Second, having reviewed and considered the parties' arguments, the Court **GRANTS** the parties joint motion for a protective order [Doc. No. 31]. Finally, the Court addresses the parties' separately-lodged joint motion to file Exhibit G under seal.

## DISCUSSION

**Paragraph 8(c): In-House Counsel for ATC.**

The parties agree that in-house counsel's access to information designated Attorneys Eyes Only should be limited, but disagree as to who shall be one of ATC's designated in-house attorneys eligible to review that information. ATC seeks to include the bolded language into paragraph 8(c) below:

> No more than two (2) in-house attorneys or officers of the receiving party (including support staff as reasonably necessary), who have signed the form attached hereto as Attachment A, who are responsible for and/or working directly in the prosecution or defense of this action, and are not presently involved in patent procurement activities and/or in business decision-making and provided that no unresolved objections to such disclosure exist after proper notice has been given to all parties as set forth in paragraph 10(b), below, ***including Mr. Evan Slavitt, Esq., Secretary of ATC and also VP of Business and Legal Affairs of AVX***.

ATC argues Slavitt, its Secretary and General Counsel, needs access to Presidio's information marked Attorneys Eyes Only because Slavitt has direct responsibility to oversee this litigation, formulate strategy and evaluate settlement possibilities. Presidio objects, arguing that Slavitt is a competitive decision-maker both for ATC and its parent company AVX (a non-party), and that giving him access to Presidio's most highly confidential information would place Presidio at great risk of inadvertent disclosure to its competitive disadvantage.

When evaluating the risk of inadvertent disclosure of Presidio's confidential information to Slavitt, the Court must examine the factual circumstances of Slavitt's relationship to ATC. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (citing *U.S. Steel Corp. v. U.S.*, 730 F.2d 1465, 1468 (Fed. Cir. 1984)). The key inquiry is whether Slavitt is "involved in 'competitive decision-making'; that is, advising on decisions about pricing or design 'made in light of similar or

...

corresponding information about a competitor.'" *Brown Bag*, 960 F.2d at 1470 (barring in-house counsel from accessing confidential information even when outside counsel withdrew from the litigation) (quoting *U.S. Steel*, 730 F.2d at 1468 n.3) (allowing in-house counsel access to confidential information where both parties agreed that in-house counsel was not involved in competitive decision-making). If the in-house counsel is involved in "competitive decision-making," "the risk of disclosure may outweigh the need for confidential information." *Intel Corp. v. Via Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (citations omitted). The party attempting to show the need for confidential information must show actual prejudice to that party's case and not just increased difficulty in managing the litigation. *See id.*

Slavitt is ATC's Secretary and General Counsel. Slavitt Decl. ¶ 4. His primary business responsibilities at ATC are to attend and draft minutes of the meetings of ATC's Board of Directors and Officers, and give legal advice relating to contracts, employment, foreign trade and environmental law. Slavitt Decl. ¶ 5. He does not give advice on pricing, marketing strategies, product development and review, manufacturing or patent claim drafting. Slavitt Decl. ¶ 5. He is not substantively involved in ATC's patent prosecution. Slavitt Decl. ¶ 6. Slavitt is, however, directly responsible for overseeing this patent infringement case and evaluating settlement possibilities. Slavitt Decl. ¶ 7. ATC argues it will be prejudiced if Slavitt cannot access the Attorneys Eyes Only information because this is ATC's first patent infringement case in its 30-year history, and ATC needs Slavitt's guidance because ATC's management is not experienced in litigation strategy and settlement evaluation. Slavitt Decl. ¶¶ 8-10.

Slavitt is the Vice-President of Business and Legal Affairs and Head of Acquisitions for ATC's parent corporation, non-party AVX. Slavitt Decl. ¶¶ 4, 15. In these roles, Slavitt reviews summaries, projections and analyses prepared by financial and marketing personnel. Slavitt Decl. ¶ 15. He has complete charge of AVX's employees and outside advisors during an acquisition. Slavitt Decl. ¶ 16. He is also AVX's sole in-house lawyer, and drafts and reviews AVX's contracts for competitive bids on projects. Slavitt Decl. ¶¶ 17-18. AVX competes with Presidio.[1]

In September 2007, AVX acquired ATC as its wholly-owned subsidiary. Slavitt Decl. ¶ 4. In

---

[1] Presidio asserts–and ATC does not rebut–that AVX is a competitor of Presidio. *See* Mem. Ps&As, p.14.

having complete charge of AVX's acquisition of ATC, Slavitt would have been required to evaluate ATC's products, competitiveness, profitability, sales and market potential.  Slavitt reviews summaries, projections and analyses to make financial and marketing decisions for AVX.  He drafts and reviews contracts for AVX  for competitive bids that could compete with Presidio.  This Court finds that Slavitt's role necessarily requires him to engage in competitive decision-making for AVX.  While AVX is not a party to this litigation, it is the parent corporation of defendant ATC.  Presidio's most precious technical and commercial information should not automatically go to an officer of a competing company that is not even a party to this litigation.  *See In re Plastics*, 2005 U.S. Dis. LEXIS 23771, *14-*15 (E.D. Penn. 2005) (preventing "disclosure of highly confidential information to the in-house legal department of a non-party . . . potentially a competitor to the party designating and producing the information, even if that legal department provides legal advice to a party in this litigation").

Further, ATC does not show that it will be actually prejudiced if Slavitt is prohibited from reviewing Presidio's most confidential information.  While it argues that its management is inexperienced with making patent litigation decisions, at most, ATC shows it may have more difficulty in managing the litigation.  For example, ATC does not allege that its outside counsel's ability to litigate will be impaired, or that its management is completely ill-equipped to thoughtfully evaluate outside counsel's recommendations.  Finally, ATC never addresses the potential damage to Presidio if its most confidential information is shared with Slavitt, or how ATC's need to have Slavitt access the confidential information could outweigh the risk of disclosure for Presidio.

Because Slavitt is engaged in competitive decision-making for AVX, and Presidio's risk of disclosure outweighs Slavitt's need for confidential information, the Court **ADOPTS** Presidio's proposed paragraph 8(c) for the protective order.

**Paragraph 7: Outside Counsel and Patent Prosecutors.**

Paragraph 7 of the Protective Order addresses the review of Attorneys Eyes Only information by counsel who may also conduct patent prosecution on behalf of a party.  Presidio seeks to insert the bolded compromise language into Paragraph 7 below:

/ / /

/ / /

1  Any individual who obtains, receives, has access to, or otherwise learns, in whole or in part, technical information *relating to products that are unreleased or potential future product offerings, including ongoing research and development, and unpublished patent applications that has been* designated ATTORNEYS' EYES ONLY under this Protective Order shall not prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming multilayer capacitor technology within two (2) years from the disclosure of such technical information or one (1) year after the conclusion of this litigation, including any appeals, whichever period is longer.  To ensure compliance with this provision, the parties shall create an ethical wall between those persons with access to technical information designated ATTORNEYS' EYES ONLY under this Protective Order and those individuals who prepare, prosecute, supervise, or assist in the prosecution of any patent application claiming multilayer capacitor technology.

At issue here is access to ATC's Attorneys Eyes Only information for Presidio's patent prosecution counsel.  ATC seeks to force Presidio's patent prosecutors to make a choice: either litigate the patents at issue, or prosecute patents in the family of patents at issue, but not both.  Attorneys at the law firm of Wood Herron & Evans LLP (WHE) prosecuted for Presidio the '356 patent at issue and its parent patent.  WHE also represents Presidio in litigating the '356 patent in this lawsuit.  ATC argues that Presidio's patent prosecutors must be restricted from accessing its confidential information because Presidio may pursue new and modified patent claims in the field of multilayer capacitor technology, where it already holds numerous patents.  ATC argues it will suffer prejudice if certain of Presidio's outside counsel who are also patent prosecutors are privy to ATC's confidential capacitor information because armed with that knowledge, even if inadvertent, Presidio's counsel can develop a patent prosecution strategy that will bring more of ATC's products within the scope of Presidio's patents.  ATC says Presidio will not be harmed if its patent prosecutors must choose, because Presidio has a technical expert and team of litigators to work on the litigation.

Presidio acknowledges its patent prosecutors should be restricted from certain of ATC's confidential information.  It proposes that the patent prosecutors be restricted from seeing confidential information that relates to ATC's unreleased or future products, ongoing research and development and unpublished pending patent applications.  Specifically, Presidio advocates access for Thomas Humphrey, one of the prosecutors of the '356 patent, and Presidio's most knowledgeable counsel.  Presidio says Humphrey is indispensable to the litigation and must have access to ATC's confidential information, subject to the proposed restriction.

When deciding whether one side's patent prosecutor should have access to the opposing party's confidential information, courts must balance the "one party's right to broad discovery and the other party's ability to protect its confidential materials from misuse by competitors." *Avocent Redmond Corp. v. Rose Electronics*, 242 F.R.D. 574, 577 (W.D.Wash. 2007) (citing *U.S. Steel Corp.,* 730 F.2d at 1468). The key inquiry is whether the attorney in question is in fact a competitive decision-maker. *Id.* (citing *U.S. Steel Corp.,* 730 F.2d at 1470). Some courts have found that a company's patent prosecutor also engages in competitive decision-making for that company, and thus must be barred from accessing the opposing party's confidential information. *See Infosint S.A. v. Lundbeck*, 2007 U.S. Dist. LEXIS 36678 (S.D.N.Y. 2007); *Motorola, Inc. v Interdigital Technology Corp.,* 1994 U.S. Dist. LEXIS 20714 (D. Del. 1994) (prohibiting outside counsel who already received plaintiff's confidential information from prosecuting patents for defendant for one year after litigation ended).[2] "Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision making, as claims may be drafted to 'read on new products and new directions where [a party] project[s] sales to be most critical.'" *Commissariat A L'Energie Atomique v. Dell Computer Corp.,* 2004 U.S. Dist. LEXIS 12782, *8 (D. Del. 2004) (barring plaintiff's attorneys from accessing defendant's highly confidential information because they were prosecuting patents involving the technology at issue, including patents for defendant's competitors) (quoting *Motorola*, 1994 U.S. Dist. LEXIS 20714 at *11).

Other courts have reached contrary results. *See Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.,* 1997 U.S. Dist. LEXIS 24130 (S.D.Cal. 1997); *Avocent*, 242 F.R.D. 574 (allowing plaintiff's prosecutors access to defendant's confidential information because defendant showed only a "vague and generalized threat of future inadvertent misuse of discovered materials"); *AFP Advanced Food Prods. LLC v. Snyder's*

---

[2] Several other courts have barred counsel from accessing the opposing party's confidential information where the counsel was involved in patent prosecution. *See Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal. 2003) (barring plaintiff's attorneys who provided advice related to patent prosecution or scope of claims); *Cummins-Allison Corp. v. Glory Ltd.,* 2003 U.S. Dist. LEXIS 23653 (N.D. Ill. 2004) (barring counsel from prosecuting certain patent applications up until one year after the conclusion of litigation, including appeals); *Medtronic, Inc. v. Guidant Corp.,* 2001 U.S. Dist. LEXIS 22805 (D. Minn. 2001) (barring attorneys who received "Outside Attorneys Eyes Only" information from participating for one year in prosecuting the clients' patents in a certain field*); In re Papst Licensing, GmbH, Patent Litig.*, 2000 U.S. Dist. LEXIS 6374 (E.D. La. 2000) (restricting Papst's counsel because risk of inadvertent disclosure outweighed any impairment on Papst's ability to litigate); *Interactive Coupon Mktg. Group, Inc. v. H.O.T.! Coupons, LLS*, 1999 U.S. Dist. LEXIS 12437 (N.D. Ill. 1999) (barring plaintiff's counsel because involvement in patent prosecution constituted involvement in competitive decision-making).

*of Hanover Mfg. Inc.,* 2006 U.S. Dist. LEXIS 426 (E.D.Penn. 2006) (finding the threat of inadvertent use of defendant's confidential information, on its own, is not enough to justify barring plaintiff's attorneys from prosecuting similar patents for two years).

Here, Presidio does not seek unfettered access to ATC's confidential information for its patent prosecutors. It "concedes that access to information by [its patent prosecutors] should be limited to a certain extent." Mem. Ps&As, p.16. Presidio proposes implementing the compromise adopted by the district court in *Infosint*, which excluded plaintiff's outside counsel from accessing any pending patent applications and ongoing research and development. 2007 U.S. Dist. LEXIS at *16-*17. Presidio advocates for this compromise because it seeks access specifically for Thomas Humphrey of the WHE firm, who has represented Presidio for several years and is the most knowledgeable outside attorney regarding Presidio and the technology involved in this case. Humphrey Decl. ¶ 2. Humphrey says his background in electrical engineering makes him uniquely qualified and necessary to help Presidio in this suit. Humphrey Decl. ¶ 3.

ATC argues the proposal is unworkable because ATC's engineers use the research and development related to the accused product for ongoing research and development, so that ATC's confidential technical documents–even if they go to a different product–include information that a patent prosecutor for a competitor would find relevant to continuous claim drafting. Mem. Ps&As, p.25. ATC asserts Presidio's patent prosecutors cannot separate this information in their minds. *Id.* It argues that by sharing its confidential information, ATC will be prejudiced because Presidio's patent prosecutors will know what experiments did and did not work, which would equip them with "a wealth of knowledge about the possible new direction for the technology." *Id.* at 27 (emphasis omitted).

In weighing Presidio's right to broad discovery against ATC's ability to protect its confidential materials from misuse by competitors, the Court ordered the parties to file supplemental briefing addressing how Presidio's proposal could be implemented. The Court also requested that Humphrey file a supplemental declaration addressing (1) his experience and procedure in separating confidential information from information he would use to advise a client; (2) whether he is prosecuting or plans to prosecute additional patent claims in the '356 patent family; and (3) why his access to ATC's confidential information is so critical.

Presidio proposed that in addition to the designations of "Confidential" and "Attorneys Eyes Only" that ATC will already be making, it also designate, at its expense, a class of documents as "Attorneys Eyes Only–Unreleased Products".  Humphrey did not explain a specific procedure for how he segregates the confidential information in his mind, but stated he would not provide ATC's confidential information to Presidio when advising it on the merits of the litigation.  Supp. Humphrey Decl. ¶ 3.  He summarily repeated that his background and experience make him uniquely qualified to analyze ATC's confidential information.  Supp. Humphrey Decl. ¶¶ 6-8.  Most notably, Humphrey said he is "not presently prosecuting and do[es] not have plans to prosecute any additional patent claims in the patent family of the '356 patent."  Supp. Humphrey Decl. ¶ 5.

ATC, without waiving its objections to Presidio's proposal, offered to designate the third category of documents that would be available to Presidio's patent prosecutors.  To safeguard the documents once they are produced to the WHE litigators, ATC proposed WHE implement these additional restrictions:

> (1) Physical Access: Hard copies of ATC's restricted documents shall be kept locked in an area inaccessible to WHE patent attorneys and employees involved in prosecuting Presidio's patent applications.  The documents shall not be removed except for copying.
> (2) Electronic Access: If WHE makes electronic copies of ATC's restricted doocuments, WHE must password protect the restricted documents with a hard-to-guess password.  WHE should also keep an electronic access log sufficient to identify who had accessed the restricted documents, and when.
> (3) Information Based or Derived from ATC Restricted Documents: WHE should create an "ethical wall" between the patent attorneys and the litigators to prevent WHE litigators from talking to WHE patent prosecutors regarding the content of ATC's restricted documents due to the danger of inadvertent disclosure.

ATC's Supp. Brief, pp.1-2.

The Court has considered Presidio's proposed compromise, but is not persuaded that it appropriately addresses ATC's ability to protect its confidential materials from misuse by competitors.  In *Infosint*, the compromise could feasibly work because the patent prosecutor practiced at a firm in Italy while the lead litigators practiced at a firm in New York.  Here, the patent prosecutors and litigators are at the same firm, in the same building.  Ex. S.  As stated in *Infosint*, the small size of WHE "increases the likelihood of inadvertent disclosure, since the members of the firm who are prosecuting

the patents at issue will be under [Humphrey's] supervision.  2007 U.S. Dist. LEXIS at *13-*14.  Further, the physical and electronic restrictions WHE would have to implement, in addition to creating an ethical wall, increase the already-high risk of inadvertent disclosure.  These restrictions would not be foolproof, and in its supplement brief ATC conceived of many situations where confidential information could be inadvertently disclosed, and it would be difficult under those circumstances to enforce the terms of the protective order.

   This Court adopts ATC's proposed version for Paragraph 7 of the protective order and agrees that the patent prosecutors for any party should make a choice: either prosecute future patents in this family of patents, or litigate the patent at issue, but not both.  While the district judge in this matter, Judge Gonzalez, found in a 1997 order that a defendant's patent prosecutors should be able to access the plaintiff's most confidential information, that case is distinguishable here.  In *Sibia*, the magistrate judge entered an order prohibiting defendant's outside counsel, who were actively prosecuting patents for defendant, from accessing plaintiff's confidential information.  1997 U.S. Dist. LEXIS 24130 at *3.  If they did access such information, the protective order required that they not engage in patent prosecution for applications relating to the technology at issue for at least one year until after the conclusion of the litigation.  *Id.*  Judge Gonzalez found that the burden imposed on defendant outweighed any risk of inadvertent disclosure, and modified the magistrate judge's protective order to allow all of defendant's outside counsel access to plaintiff's confidential information.  *Id.* at *27.  In making her decision, Judge Gonzalez (1) found it "highly significant . . . that Sibia has been unable to cite any case other than *Motorola* in which a court even considered entering a protective order that disqualified outside counsel"; (2) determined that none of the outside attorneys engaged in competitive decision-making for defendant; and (3) ruled there was no indicia that a party was seeking to promote inadvertent misuse of confidential information by "transferring to its litigation counsel the responsibility for prosecuting the same patents that were at issue in the litigation".  *Id.* at 22, 26-27.

   Here, numerous cases since *Motorola* have barred a plaintiff's patent prosecutors from accessing a defendant's most confidential information.  *See* p.6 of this Order, n.2.  Second, Humphrey is involved in competitive decision-making for Presidio.  Like the patent counsel in *Infosint*, Humphrey has represented Presidio for several years and is the most knowledgeable attorney regarding Presidio and the

technology in the lawsuit. *See Infosint*, 2007 U.S. Dist. LEXIS at *13. By prosecuting patents for Presidio, Humphrey would have had to make decisions involving scope and emphasis, such as drafting claims to read on new products and new directions "where [a party] projects sales to be more critical." *Commissariat*, 2004 U.S. Dist. LEXIS at *2 (quotations omitted). Further, Presidio, as a client of the WHE firm, may expect that Humphrey and other patent prosecutors are intimately involved with decision-making. The WHE firm markets itself as a firm with "a managed team approach" where "a lead attorney is closely associated with the client's research and commercial activities." Ex. Q. It advertises that the attorneys are inextricably intertwined with the decision-making of their clients. Ex. R. The firm also advertises that its attorneys employ a patent protection strategy where they "work very closely with the client by explaining the patent coverage currently obtained and currently sought, and receiving input from the client on possible new directions for the technology so that the patent protection can also be steered in those same directions." Ex. P. Humphrey, as the most knowledgeable attorney regarding Presidio and the technology involved in this lawsuit, can be expected, if he prosecutes further patents related to the one at issue here, to discuss new directions for Presidio's technology.

Third, there is some indicia that Presidio is at risk of inadvertently misusing ATC's confidential information. Presidio concedes that its patent prosecutors should not have access to all of ATC's highly confidential information. Also, Humphrey says that while he has no plans to prosecute more patents in the '356 patent family, he has not made the same statement regarding the WHE firm as a whole, so it is feasible that the WHE firm could prosecute more patents in the '356 family. *See Infosint*, 2007 U.S. Dist. LEXIS at *13.

Finally, if Presidio's patent prosecutors are not allowed access to ATC's confidential information, the burden on Presidio is minimal. Presidio is most concerned about access for Humphrey. But Humphrey says he has no plans to prosecute further patents in the '356 family of patents. Also, if Presidio chooses to keep Humphrey from accessing ATC's most confidential information, Presidio does not show that it will be prejudiced by receiving advice from other lawyers at the WHE firm. In his supplemental declaration Humphrey never addressed–though the Court specifically ordered him to do so–whether any other counsel could adequately advise Presidio with respect to its technical patent

issues. Further, Presidio–despite having an additional opportunity to do so–has made only conclusory assertions as to why Humphrey's access is so critical to litigating this case.

Because Humphrey is engaged in competitive decision-making for Presidio, and ATC's risk of disclosure outweighs Presidio's need to have its patent prosecutors access ATC's confidential information, the Court **ADOPTS** ATC's proposed paragraph 7 for the protective order. The Court **DENIES** Presidio's proposed compromise for a two-tier system of confidential documents accessible to outside counsel.

**Joint Motion to File Exhibit G Under Seal.**

The Court has reviewed Presidio's proposed justification for filing Exhibit G under seal and finds that there is good cause to grant the joint motion. The Court will enter a separate order addressing the filing of Exhibit G under seal.

## Conclusion and Order

The Court **GRANTS** the parties' joint motion to file excessive pages in support of their memorandum of points and authorities [Doc. No. 32] and **GRANTS** the parties joint motion for a protective order [Doc. No. 31]. The parties shall lodge a proposed protective order in accordance with the terms of this Order by *March 7, 2008*.

**IT IS SO ORDERED.**

DATED: March 4, 2008

Hon. Nita L. Stormes
U.S. Magistrate Judge